UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re                              )
                                   )
LITESTREAM TECHNOLOGIES, LLC,      )    Case No. 8:04-bk-3721-KRM
                                   )    Chapter 11
                                   )
        Debtor.                    )
                                   )
_____)


MEMORANDUM OPINION AND ORDER
REGARDING CLAIM OF PASCO COUNTY TAX COLLECTOR

This is a contested matter, under Bankruptcy Code Section 505(a), to determine the amount of the Pasco County Tax Collector's claim for 2004 tangible personal property taxes - filed in the amount of $61,472.96.[1] The claim is based on an assessed valuation by the County's Property Appraiser.

The Liquidating Trustee for the estate, who is holding sufficient cash to pay the claim, and the purchaser of the debtor's Pasco County operations challenged the claim, arguing that the underlying assessment exceeds "just valuation." For the reasons set forth in more detail below,

---

[1] The claim was actually filed in the amount of $93,983.19, but that included $32,510.23 for the assessed 2003 tangible personal property taxes, which have been paid in full.

the Court concludes that the assessment was made in accordance with state law and will not be overturned or modified.

## BACKGROUND

The Bankruptcy Case

The debtor built and operated fiber optic telecommunications systems (for telephone, cable television, and internet connection) in developing residential communities in Pasco and St. Johns Counties. Its assets consisted of franchise rights in each county, agreements with developers, system equipment and infrastructure, and about 1,100 consumers' subscription contracts.

This case began on February 26, 2004, when three unsecured creditors filed an involuntary petition for relief under Chapter 7. The case was converted to Chapter 11 on March 3, 2004, after the debtor consented to the entry of an order for relief.

Shortly thereafter, in May 2004, all of the debtor's assets were sold in a Section 363 sale. Later, the Court confirmed the debtor's plan of liquidation, which provided for the payment of creditors' claims in full. A liquidating trustee was appointed to disburse the asset sales proceeds to holders of allowed claims.

2

The Sale of the Pasco County Assets

The debtor did not have sufficient capital to complete the build-out of its fiber optic systems. As a result, the debtor was compelled to sell all of its assets at an auction, pursuant to Bankruptcy Code Section 363. On May 21, 2004, the assets related to its Pasco County operations (including the franchise rights, developer contracts, customers' agreements, and installed equipment, collectively, the "Pasco Assets") were sold for $3,130,000 to BrightHouse Networks LLC (the "Purchaser").

The order approving the sale, entered on May 12, 2004 (Doc. No. 123, the "Sale Order"), provides that the Purchaser will acquire the assets "free and clear of all liens, claims, interests and encumbrances" (Sale Order, ¶ 8). Paragraph 13 of the Sale Order also provides:

> Any person or holder of a tax lien claim on account of any asset being conveyed *may file such tax lien claim against the proceeds* in conjunction with the motion for the allowance of the secured claim and *for disbursement of tax lien payments*, and this Court shall reserve jurisdiction to consider such motions and claims.

(emphasis added).

At the closing, the Purchaser was given a credit (i.e., a reduction of the purchase price) of $12,097.70, for

the pro-rated amount of the parties' $30,000 estimate of the 2004 personal property taxes. This was done to allow the Purchaser to pay the 2004 tax bill, using the credited amount of $12,097.70 to offset the obligation.

The Tax Claim

After the closing, the Tax Collector filed a proof of claim (Claim No. 73) for the *estimated* amount, $61,472.96, of the 2004 tangible personal property taxes, some $31,000 more than the debtor and Purchaser had estimated at the closing. The 2004 taxes were later assessed in the amount of $55,695.75 and remain unpaid.

In accordance with the Sale Order, the Tax Collector filed a motion seeking (1) allowance of a secured claim for the 2004 taxes and (2) payment of the claim from the sale proceeds held by the estate. The debtor and, later, the Liquidating Trustee opposed the motion, contending that because the 2004 taxes had not yet been assessed, there was no lien in existence on the closing date and the Tax Collector had no lien against the proceeds of the May 21, 2004 sale

4

(Doc. No. 182).[2] The debtor argued further that the Purchaser owed the taxes. The Court determined (Doc. No. 506) that under state law the Tax Collector's lien attached to the Pasco Assets as of January 1, 2004. Therefore, the lien for the 2004 taxes did attach to the proceeds of the May 21, 2004 sale, in accordance with the Sale Order. Therefore, the trial in this case dealt only with the motion to determine the amount of the taxes due.

The debtor also objected to the Tax Collector's claim (Doc. No. 254). Thereafter, the Purchaser -- seeing that the claims objection process might result in a determination that it alone owes the 2004 taxes -- filed a motion seeking a determination of the amount of the tax liability (Doc. No. 447). The Liquidating Trustee joined in that motion.

The Tax Assessment

In April 2004, before the sale of the Pasco Assets, the debtor filed a Tangible Personal Property Tax Return with the Pasco County Tax Appraiser. The return included a

---

[2] Florida property taxes are levied effective January 1 for that calendar year. Taxes are due and payable later in the year, on November 1. Notices for that tax year are mailed on the last working day of October. Consequently, the 2004 tax notice was not available when the Tax Collector filed the claim.

schedule showing categories of assets (e.g., "tools," "headend equipment," "cable and wire"). On the form, the debtor self-reported its "estimate of fair market value" as "$3,343,786," based on its total installed costs of the two telecommunications systems located in the county.

The Property Appraiser then utilized the "cost approach" to value the assets that the debtor had reported in its 2003 and 2004 tax returns. The Property Appraiser examined these assets by categories and then adjusted the debtor's reported values by a "composite factor" to account for lower replacement costs and depreciation. These adjustments resulted in an aggregate assessed value of $3,109,878.

The Purchaser and the Liquidating Trustee contend that the assessed value is excessive: they argue that it was error for the Property Appraiser to ignore the price, $3,130,000, which was paid for *all* of the Pasco Assets, including valuable *intangible* contract rights and accounts. In the alternative, they argue that even under the cost approach, the Property Appraiser should have excluded the labor costs incurred by the debtor for digging trenches and installing the systems underground. Finally, they assert that the tangible assets have virtually no value because the Purchaser does not

6

use the debtor's fiber optic system; instead it uses its own coaxial cable system to service the debtor's former customers.

## DISCUSSION

Bankruptcy Code Section 505(a) authorizes the Court to "determine the amount or legality of any tax" as long as that tax has not been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement" of the bankruptcy case. Therefore, this Court has authority to determine the amount of the debtor's tax liability, even though the debtor did not timely contest the tax in accordance with state law procedures.[3] *See In re Piper Aircraft Corp.*, 171 B.R. 415, 418 (Bankr. S.D. Fla. 1994).

Although Section 505(a) gives the debtor a renewed opportunity to contest its taxes, the standards to be applied in determining the amount of the taxes are those established by state law. *See In re Liuzzo*, 204 B.R. 235, 237 (Bankr. M.D. Fla. 1996). The Property Appraiser is required to appraise all

---

[3] The instant case was filed before the effective date, October 17, 2005, of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The 2005 amendment of Section 505(a), which now requires that the time for contesting the tax in a state forum not have expired, does not apply.

7

taxable property as of January 1 of the current tax year. Florida Statutes, Section 192.042. The assessment is to be made at "just value." Fla. Const. Art. VII, § 4.

In turn, Florida law requires property appraisers to consider eight statutory factors to arrive at "just value." Section 193.011, Florida Statutes (2004). The property appraiser must *consider* all of these factors, but has discretion in weighing them and calculating the assessed value. *In re Liuzzo*, 204 B.R. at 238 (citing *Valencia Center, Inc. v. Bystrom*, 543 So.2d 214, 216 (Fla. 1989)).

Florida law also recognizes a "presumption of correctness" of an assessment, so long as the eight statutory factors have been considered. *Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d 85, 89 (Fla. 2002). The burden is on the party challenging the assessment to overcome this presumption, by demonstrating that the property appraiser has failed to properly consider the Section 193.011 factors.

> The method of valuation and the weight to be given each factor is left to the appraiser's discretion, and the decision will not be disturbed on review as long as each factor has been lawfully considered and the assessed value is within the range of reasonable appraisals. Because there are so many well-recognized approaches for arriving at an appraisal, the Appraiser's decision may be overturned only if there is *no reasonable hypothesis to support it.*

*Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d at 91 (emphasis added).[4]

The Property Appraiser did not abuse his discretion by utilizing the "cost approach" to value the debtor's tangible property. The "cost approach" is the appropriate method of calculating the value of a cable television company's tangible property. *Havill v. Scripps Howard Cable Company*, 742 So.2d 210, 215 (Fla. 1998)(holding that neither the "income approach," nor the unit-rule method of appraisal were permissible in valuing cable system equipment). The cost approach does not imply, however, that the Property Appraiser ignored the statutory factor of the "net proceeds of the sale of the property." Florida Statutes, Section 193.011(8). The Chief Assistant Property Appraiser testified that he had considered all eight statutory factors. This testimony was unrebutted.

Nor did the Property Appraiser abuse his discretion by disregarding the price which the Purchaser paid at the May 21, 2004 sale. The sale occurred well after the statutory

---

[4] The Purchaser contends that the Court has previously rejected the foregoing standard, in its order denying the Tax Collector's motion for summary judgment (Doc. No. 506). That ruling, however, only *deferred* a decision on the application of Florida law to allow the Liquidating Trustee and the Purchaser to make an evidentiary record challenging the assessment.

9

valuation date of January 1, 2004. Moreover, the sale was not indicative of either a fair market value or of what portion of the price was attributable to the tangible assets.

The sale was not made by a willing seller. The debtor did not have sufficient cash to complete its obligations under its contracts with developers. Future defaults under those contracts were imminent. The debtor was not in a position to hold out for a negotiated sale at top dollar. The sale was accomplished by an auction to achieve any sale before the debtor's funds were exhausted.

It is evident that the debtor viewed the tangible assets as being worth more than the 2004 assessment. The debtor's former vice president of finance admitted that the debtor self-reported *all* of its booked costs, $3,343,786, as the "market value" of the tangible assets in Pasco County. He did this to encourage bidders to pay an even higher price for both the tangible and intangible assets.

Finally, the Property Appraiser did not abuse his discretion by including the installation costs associated with the cable systems, which were stated to be about 50-60% of the

systems' book value.[5] Installation costs are incurred to place tangible personal property -- in this case, the fiber optic cable -- into service and have it ready to carry out its intended ultimate functions, to bring telephone, cable T.V. and internet access to the ultimate customers.

In *Mazourek*, the Florida Supreme Court held that ancillary costs such as freight, installation, taxes, and fees are part of acquisition costs to be considered in the cost approach to value.

> It is obvious that in determining how long to keep a fixture in use (which is what depreciation is really all about) the owner must consider all of the business costs involved in acquiring and installing the fixture. Part of the owner's decision to replace an item has be [sic] based on the total investment (including sales tax) he has in the item. This reasoning is supported by all of the authoritative appraisal texts recognized by the experts.

*Mazourek v. Wal-Mart Stores, Inc.*, 831 So.2d at 91 (citation omitted).

Finally, the Purchaser used at least some of the installed fiber optic cable for a limited time to provide

---

[5] The Purchaser does not attack the 2003 assessment, which was presumably computed by the debtor in the same way on its 2003 return. This amount carries over onto the 2004 return, where $1,101,184 is the value of the cable and wire in place in 2002.

cable service to the Purchaser's newly acquired customers in Pasco County. The value of the tangible personal property, as of January 1, 2004, would not change based on the Purchaser's subsequent election to discontinue the use of the purchased equipment.

## CONCLUSION

The cost approach, as employed by the Property Appraiser in this case, is an appropriate method of valuing the debtor's cable system. The Property Appraiser did not abuse his discretion in calculating the assessed value by starting with the debtor's self-reported value and adjusting it for depreciation and replacement cost. Therefore, the 2004 tangible tax assessment will not be overturned or modified.

The objection to Claim No. 73 is sustained, in part, so that it is allowed in the amount of the tax as assessed, $55,695.75, plus statutory interest. The Liquidating Trustee is authorized and directed to pay the allowed claim in full within thirty (30) days from the entry of this order, unless

the parties reach an agreement that the Purchaser will pay the tax after revising the pro-ration employed at closing.[6]

DONE and ORDERED in Tampa, Florida, this 17th day of February, 2006.

K. RODNEY MAY
United States Bankruptcy Judge

Copies Furnished To:

Litestream Technologies, LLC, Debtor, Post Office Box 172986, Tampa, Florida 33672

Patrick T. Lennon, Esquire, Attorney for Debtor, Post Office Box 1531, Tampa, Florida 33601

David J. Tong, Esquire, Attorney for Pasco County Tax Collector, 201 E. Kennedy Boulevard, Suite 600, Tampa, Florida 33602

Michael C. Markham, Esquire, Attorney for BrightHouse Networks, Post Office Box 1368, Clearwater, Florida 33757

Theresa M. Boatner, Esquire, Office of United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, Florida 33602

---

[6] In the event the Liquidating Trustee pays the claim in full, the Purchaser shall return to the estate the amount of the credit of $12,097.70, and pay the estate the pro-rated amount for the period from May 21 through December 31, 2004.